IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI MULDER, individually and on behalf of all others similarly situated,<br>Plaintiff | : : : | No. 3:25cv151<br><br>(Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| MAXIMUS SERVICES LLC; and MAXIMUS FEDERAL SERVICES, INC., agent of Maximus, Inc. agent of BlackRock, Inc. agent of Fidelity Management & Research Co., LLC,<br>Defendants | : : : : : : | |

## MEMORANDUM

Plaintiff Lori Mulder asserts claims against her former employers, Maximus Services LLC and Maximus Federal Services, Inc., for breach of contract and failure to pay wages due and owing under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 PA. STAT. § 260.1, *et seq.* Mulder also advances claims for disability discrimination, retaliation, and failure to accommodate pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA").

Before the court is a motion to dismiss Mulder's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). For the reasons that follow, the motion to dismiss will be denied.

## Background

This case arises from a series of medical conditions and injuries that, as plaintiff alleges, culminated in the termination of her employment. Mulder worked for defendants for approximately 11 years as a clinical medical consultant.[1] (Doc. 7, Am. Compl. ¶¶ 32, 67). She initially worked from defendants' Pittston, Pennsylvania office but later transitioned to working remotely from home in Scranton. (Id. ¶ 33).

Mulder's amended complaint details several medical conditions. Relevant here, plaintiff suffers from severe depression. (Id. ¶ 34). In mid-September 2022, she required a medical leave of absence while seeking treatment and care for her condition. (Id.) Plaintiff returned to work on or about January 31, 2023. (Id. ¶ 35).

In February 2023, plaintiff experienced serious vision and eye problems and required emergency medical care. (Id. ¶ 36). Upon the recommendation of a retina specialist, plaintiff took a medical leave of absence from approximately February through early April 2023 so that she could receive treatment for a potential retinal tear. (Id. ¶ 38).

---

[1] These background facts are derived from plaintiff's amended complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

After returning to work, plaintiff allegedly faced discriminatory comments from her manager, Barbara Kielbasa. (Id. ¶ 39).  For example, Kielbasa required Mulder to attend a meeting on an accommodated day off pursuant to her medical condition. (Id. ¶ 40).  On another occasion, Kielbasa informed plaintiff that she could not request summer vacation because such requests had to be submitted earlier when plaintiff was on medical leave. (Id. ¶ 41).  Kielbasa further stated that plaintiff had already taken sufficient time off. (Id. ¶ 43).

Plaintiff contends that she reported Kielbasa's discriminatory comments to defendants' Human Resources ("HR") Specialist, Crystal Cantu, who took no action to address the complaint. (Id. ¶ 44).

In May 2023, plaintiff fell and injured her spine and right wrist. (Id. ¶ 45). Her orthopedic providers recommended that she take medical leave. (Id. ¶ 46). Defendants approved plaintiff's request for leave from mid-May 2023 through mid-July 2023. (Id. ¶ 47).  Mulder alleges that her injuries limited her ability to walk and caused additional falls and injuries at home. (Id. ¶¶ 49, 48).  Mulder asserts that she kept defendants informed of her medical progress. (Id. ¶ 51).

According to plaintiff, shortly after the fall, Kielbasa contacted her to ask when she would return to work. (Id. ¶ 52).  In July 2023, Kielbasa also remarked in an email to an IT employee that she was unsure whether Mulder would return from leave. (Id. ¶ 53).

Plaintiff alleges that her recovery from her injuries necessitated two extensions of her medical leave, first to August 14, 2023, and then to September 25, 2023. (Id. ¶ 54).  Defendants approved both requests. (Id.).

In mid-August 2023, Mulder spoke with Cantu, the HR specialist, by phone and explained that she needed to extend her leave to September 25, 2023 but anticipated returning to work at that time with certain work restrictions. (Id. ¶ 55). On or about August 29, 2023, Cantu allegedly called plaintiff and gave her an ultimatum: return to work the next day without accommodation or resign. (Id. ¶ 56).  According to plaintiff, Cantu insisted that she make a decision during the call and refused to allow plaintiff time to contact her doctor regarding possible accommodation. (Id. ¶ 57).   When plaintiff asked whether she could perform other duties so that she could return to work sooner, Cantu did not respond. (Id. ¶ 58).

Plaintiff allegedly asked Cantu if the ADA applied or could assist her in this situation. (Id. ¶ 60).  Cantu allegedly responded that it did not. (Id.)  Cantu further stated that defendants would not consider any accommodation that would allow Mulder to return to work. (Id. ¶ 61).  Plaintiff explained that she could not return the next day without accommodation.[2] (Id.)  Cantu then stated that she would

_____

[2] Plaintiff alleges that she would have been able to return to work shortly after that date. (Doc. 7, Am. Compl. ¶ 62).  Plaintiff contends that defendants could have accommodated her by continuing her approved medical leave through September 2023. (Id.)  Alternatively, plaintiff

4

prepare the necessary paperwork and call plaintiff the following day regarding her separation. (Id. ¶ 63).

Cantu called Mulder the next day. (Id. ¶ 64).  During the call, plaintiff explained that she did not want to resign and believed it was wrong for defendants to sever ties when she expected to return to work within a month and was still undergoing treatment. (Id.)  Cantu responded that the only alternative to resignation was involuntary termination. (Id. ¶ 65).  Plaintiff refused to resign. (Id. ¶ 66).  Cantu then informed Mulder that defendants were involuntarily terminating her employment. (Id.)  Defendants subsequently sent plaintiff paperwork confirming that her employment was involuntarily terminated effective September 1, 2023. (Id. ¶ 67).  Defendants did not provide plaintiff with any severance payment. (Id.)

Based on the above allegations, Mulder filed this suit individually and on behalf of a class of:

> All persons formerly employed by either or both Defendants a) for twelve (12) months or longer, b) whose employment was involuntarily terminated for non-disciplinary reasons in the last three (3) years, and c) who were not offered comparable continued employment by a successor vendor of Defendants, and d) who were denied the severance pay described in Defendants' Severance Policy.

---

asserts that she could have returned to work sooner with another accommodation such as reassignment to a position consistent with her physical limitations while she healed. (Id.)

(Id. ¶ 23).

Mulder's amended complaint advances the following causes of action:

- Count I – Discrimination, retaliation, and failure to accommodate in violation of the ADA (asserted by Mulder individually), (id. ¶¶ 92–98);

- Count II – Failure to pay wages due and owing in violation of the WPCL (asserted by Mulder individually and on behalf of the class members), (id. ¶¶ 99–108); and

- Count III – Breach of contract under state law (asserted by Mulder individually and on behalf of the class members), (id. ¶¶ 109–113).[3]

Defendants' Rule 12(b)(6) motion seeks dismissal of this action with prejudice. (Doc. 8).

**Legal Standard**

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows

---

[3] As plaintiff brings suit pursuant to the ADA, a federal statute, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

**Analysis**

**1. Breach of Contract – Contractual Right to Severance Pay**

Mulder's amended complaint alleges that defendants breached their contractual obligation to pay severance to plaintiff and the putative class members. (Doc. 7, Am. Compl. ¶¶ 110-112).  Specifically, Mulder relies on the defendants' 2022 Employee Handbook ("2022 Handbook"), which states, "Employees who qualify for severance pay include regular, full and part-time staff and limited service employees (required to be employed with Maximus for 12 months or longer) whose employment is involuntarily terminated." (Doc. 11-2, 2022 Handbook, Ex. B. at 25).

Defendants raise several arguments as to why the amended complaint fails to state a breach of contract claim.  First, defendants contend that Mulder improperly relies on the 2022 Handbook to establish a contract. (Doc. 10, Br. in Supp. at 7).  According to defendants, the handbook cannot constitute an enforceable contract because it expressly disclaims the creation of an employment agreement. (Id. at 8).  Alternatively, defendants argue that even if the handbook could constitute a contract, it does not guarantee a blanket right to severance. (Id. at 9).  Lastly, defendants contend that the 2022 Handbook was superseded by a more recent version. (Id. at 12).  As discussed below, these arguments are better suited for summary judgment.

8

*Whether the 2022 Handbook is a contract* – To successfully maintain a cause of action for breach of contract under Pennsylvania law, the plaintiff must establish: (1) the existence of an agreement, including its essential terms; (2) a breach of a duty imposed by that agreement; and (3) damages resulting from the breach. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).

With respect to the first element, a contract may be formed orally, in writing, or inferred from the acts and conduct of the parties. Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).  An express contract arises "when the terms of an agreement are declared by the parties." Dep't of Env't Res. v. Winn, 597 A.2d 281, 284, n. 3 (Pa. Commw. Ct. 1991).  By contrast, "a contract implied in fact ... arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." Cameron, to Use of Cameron v. Eynon, 3 A.2d 423, 424 (Pa. 1939).

Defendants argue that the 2022 Handbook is not a contract. (Id. at 8). Specifically, defendants point to a provision stating that: "[n]othing contained in this [2022 Handbook] or any other document provided to the employee is intended to be, nor should it be, construed as a contract that employment or any benefit will be continued for any period of time[,]" nor is it "intended to or creates

9

an employment agreement, express, or implied."[4] (Doc. 11-2, 2022 Handbook, Ex. B at 6.).

Under Pennsylvania law, "[i]t is well-settled that to find that ... a handbook has legally binding contractual significance, the handbook or an oral representation about the handbook must in some way clearly state that it is to have such effect." Luteran v. Loral Fairchild Corp., 688 A.2d 211, 215 (Pa. Super. Ct. 1997) (quotation marks omitted) (cleaned up).  The mere inclusion of a policy in an employer-issued handbook, without more, does not create an enforceable agreement. Id.  Rather, "[i]t must be shown that [the employer] intended to offer [the policy] as a binding contract." Morosetti v. Louisiana Land & Expl. Co., 564 A.2d 151, 152–53 (Pa. 1989).  Thus, "explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim" based solely on the

---

[4] Defendants submitted a copy of the 2022 Handbook in support of their motion to dismiss. (Doc. 11-2, 2022 Handbook, Ex. B). In deciding a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up)); see also Doe, 30 F.4th at 342 (citations and internal quotation marks omitted).

Mulder expressly references the 2022 Handbook in her amended complaint. (Doc. 7, Am. Compl. ¶ 75).  The court will therefore reference portions of this document in this memorandum.

10

handbook. Caucci v. Prison Health Servs., Inc., 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001).

Here, Mulder clarifies in her brief in opposition that she does not rely on the 2022 Handbook as the sole basis for her breach of contract claim. (Doc. 12, Br. in Opp. at 5).  Instead, she alleges that defendants' course of conduct and the parties' dealings, together with the 2022 Handbook, demonstrate the formation of a unilateral contract. (Id. at 5-6).  Specifically, plaintiff contends that defendants offered certain benefits and that she accepted that offer through her continued employment. (Id. at 6).

This assertion is not without support.  Under Pennsylvania law:

> [P]rovisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required.

Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 941 (Pa. Super. Ct. 2011), aff'd, 106 A.3d 656 (Pa. 2014) (quoting Caucci, 153 F. Supp. 2d at 611).

Accordingly, federal courts applying Pennsylvania law have recognized that a contract may arise when an employer offers a specific benefit or reward in

11

exchange for a particular action, such as remaining employed, even if the employee is otherwise at-will or the handbook contains a disclaimer. See, e.g., Ryan v. Prudential Ins. Co. of Am., No. CIV.A.03-CV-1674, 2004 WL 2406689, at *2 (E.D. Pa. Oct. 26, 2004) (denying motion to dismiss where plaintiff sufficiently alleged a contractual right to bonus payments accepted through continued employment); Caucci, 153 F. Supp. 2d at 611 (denying motion to dismiss where the employer's conduct plausibly suggested a contractual entitlement to overtime pay despite handbook disclaimer).  In such circumstances, "[t]he Employee Handbook is not the sole basis for the alleged contract, but a factor contributing to the Plaintiffs' understanding of their employment agreement." Masterson v. Fed. Exp. Corp., No. 07-CV-2241, 2008 WL 4415700, at *4 (M.D. Pa. Sept. 26, 2008).

Here, Mulder's amended complaint alleges that, as consideration for employment, defendants agreed to provide plaintiff and the class members with certain benefits set forth in the 2022 Handbook. (Doc. 7, Am. Compl. ¶ 73). Mulder and class members allegedly understood that, by continuing to work for defendants, they accepted those offered benefits. (Id. ¶ 74).  These benefits included paid time off, bonuses, health insurance, and retirement benefits. (Id. ¶ 77).

12

At this stage of the proceedings, Mulder's allegations plausibly support the inference that discovery regarding defendants' course of conduct and representations may further establish a contractual obligation, including the obligation to make severance payments.  Viewing the amended complaint in the light most favorable to plaintiff, the court cannot conclude that the 2022 Handbook's disclaimer forecloses the breach of contract claim.

*Defendants' discretion under the 2022 Handbook* – Defendants further argue that, even assuming that the 2022 Handbook constitutes a contract, it does not guarantee a blanket right to severance. (Doc. 10, Br. in Supp. at 9). According to defendants, an employee's eligibility for severance is discretionary because the 2022 Handbook states that "Maximus reserves the right to suspend or alter this benefit [i.e., severance] in situations that are deemed seriously prejudicial to the Company.  Severance will not be provided in situations where the employee is offered comparable, continued employment by a successor vendor or in disciplinary discharge situations."[5] (Id.; see also Doc. 11-2, 2022 Handbook, Ex. B at 25-26).

---

[5] Additionally, defendants rely on the 2022 Handbook's use of the term "generally" in the provision stating that "[g]enerally, qualified employees will receive severance in accordance with the chart below, based on the employee's job band []" precludes Mulder from receiving severance. (Doc. 10, Br. in Supp at 9; Doc. 11-2, 2022 Handbook, Ex. B at 25).

On the other hand, plaintiff asserts that the inclusion of the word "generally" in the 2022 Handbook does not render severance discretionary. (Doc. 12, Br. in Opp. at 7).  The court agrees with plaintiff.

13

Mulder's amended complaint alleges that "she worked for Defendants for longer than twelve (12) months, she was terminated involuntarily but not in a disciplinary discharge situation, and she was not offered comparable continued employment by a successor vendor." (Doc. 7, Am. Compl. ¶ 83). Accepting these allegations as true and considering the plain language of the 2022 Handbook, Mulder has plausibly satisfied the conditions required to receive severance.

Plaintiff also asserts that the provision stating that defendants "reserve[] the right to suspend or alter this benefit [severance] in situations that are deemed seriously prejudicial to the Company" does not render severance entitlement discretionary. (Doc. 12, Br. in Opp. at 7). Instead, plaintiff contends that the language permits defendants to modify the benefit prospectively for employees who have not yet satisfied the conditions for severance. (Id.) However, Mulder contends that this language does not allow defendants to retroactively deny severance once those conditions have been met. (Id.) Plaintiff's interpretation is consistent with governing law. See Knapp v. Susquehanna Vill. Facility Operations, LLC, No. 3:18-CV-1941, 2019 WL 4671108, at *5 (M.D. Pa. Sept.

---

The word "generally" means, as relevant here, "in a general manner: such as a: in disregard of specific instances and with regard to an overall picture [,] [or] [b] as a rule: usually [.]" Generally, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/generally (last visited March 15, 2026). Under this ordinary meaning, the handbook's provision indicates that severance payment is the default rule, subject to limited exceptions. Thus, Mulder's interpretation is persuasive.

14

24, 2019) ("While the language here may be reasonably construed to suggest that Defendant could modify any policy for which work was to be performed prospectively, nothing in the provision suggests that Defendant had any right to retroactively modify its policy as to completed work.") (collecting cases).

At this juncture, the interaction between the 2022 Handbook's disclaimer language and defendants' promise of severance benefits for eligible employees creates ambiguities to explore in discovery, which precludes dismissal of plaintiff's amended complaint.

*Satisfaction of the severance requirements* – Defendants' other arguments lead to the same outcome. They also argue that severance pay was conditional. (Doc. 10, Br. in Supp. at 11). They rely on a provision in the 2022 Handbook stating that "[t]o be eligible, employees must sign/return a separation agreement, have an executed Confidentiality Agreement (C&RC) or other Maximus equivalent version of this document." (Id.; see also Doc. 11-2, 2022 Handbook, Ex. B at 25). According to defendants, plaintiff failed to allege that she satisfied these conditions and is therefore ineligible for severance pay. (Br. in Supp. at 11). Put differently, defendants argue that plaintiff failed to fulfill a condition precedent to severance payment.

In response, plaintiff asserts that this provision implies that defendants were required to provide her with a separation agreement in the first place since

15

the handbook states that she had to "return" it. (Doc. 12, Br. in Opp. at 8). Mulder further contends that the provision is unclear as to whether the referenced confidentiality agreement would be part of the separation agreement or a separate, preexisting document. (Id.)  Plaintiff asserts that she recalls completing various confidentiality and nondisclosure forms during her employment with defendants, which would be in defendants' possession. (Id.)

Under defendants' reasoning, plaintiff would have been required to sign and return a separation agreement before becoming eligible for severance pay. Defendants cite Theobald v. R.H. Kuhn Co., Inc., No. 342 WDA 2016, 2017 WL 1041394, at *7 (Pa. Super. Ct. Mar. 17, 2017) for support.  In Theobald, however, the employment agreement and compensation incentive plan expressly provided that severance payments were "conditioned upon the [employee] having provided [employer] with an executed general release in the form attached hereto as Exhibit A (the "General Release") [.]" Id. at *1.  In that case, the employee had access to the general release.

Here, by contrast, there is no indication that plaintiff was ever provided with a separation agreement and refused to sign it.  Without more, this presents a factual dispute that is more appropriately addressed at summary judgment.

*Whether the 2022 Handbook was superseded by a newer edition* – Finally, defendants argue that the 2022 Handbook was superseded by the February

16

2023 edition ("2023 Handbook"). (Doc. 10, Br. in Supp. at 12; Doc. 11-1, 2023 Handbook, Ex. A at ECF p. 2).

Plaintiff, however, asserts that she did not receive the 2023 Handbook during her employment despite remaining employed through August 2023 and requesting a copy after her termination. (Doc. 12, Br. in Opp. at 10-11).

Neither party disputes that it is defendants' responsibility to provide plaintiff with the most updated edition of the Handbook, particularly upon her request. See 43 PA. STAT. § 260.4 ("It shall be the duty of every employer to notify his employes at the time of hiring of the time and place of payment and the rate of pay. . . and any change with respect to any of these items prior to the time of said change."). Whether plaintiff requested the 2023 Handbook and whether defendants failed to provide it presents a factual dispute better suited for a motion for summary judgment.[6]

In sum, plaintiff's amended complaint plausibly alleges a breach of contract claim against defendants. Accordingly, defendants' motion to dismiss the breach of contract claim in Count III will be denied.[7]

---

[6] Plaintiff disputes both the authenticity and applicability of the 2023 Handbook. (Doc. 12, Br. in Opp. at 10-11). In light of the factual dispute, the court need not reach these arguments.

[7] Plaintiff also asserts a WPCL claim based on her breach of contract claim. The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." Braun, 24 A.3d at 953 (citing Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997)). The WPCL "does not create a right to compensation"; rather it

17

## 2. ADA Claims

Plaintiff also brings ADA claims for disability discrimination, retaliation, and failure to accommodate.  Defendants seek dismissal of all these claims.[8]

### a. Disability Discrimination

Congress enacted the ADA "to provide civil rights protections for persons with disabilities."  Ford v. Schering-Plough Corp., 145 F.3d 601, 606 (3d Cir.

---

simply "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990).

To state a WPCL claim, a plaintiff "need not plead the existence of any formal employment contract." Euceda v. Millwood, Inc., No. CIV.A. 3:12-0895, 2013 WL 4520468, at *4 (M.D. Pa. Aug. 26, 2013) (Mannion, J.).  Instead, "the plaintiff need only plead the existence of some contractual agreement to pay wages that [the] defendant now owes to the plaintiff." Id.; see also Caddick v. Tasty Baking Co., No. 2:19-CV-02106-JDW, 2019 WL 10943308, at *1 (E.D. Pa. Dec. 18, 2019).

As discussed above, Mulder has sufficiently pleaded a breach of contract claim.  Because she has, the court concludes that plaintiff has also adequately pleaded a WPCL claim.  Defendants' motion to dismiss Count II will therefore be denied.

[8] Defendants argue that plaintiff improperly combines these three theories of liability and for that reason, her ADA claims must be dismissed.  Defendants' argument places form over substance.

"The Federal Rules do not require technical forms of pleading." LeGare v. Univ. of Pennsylvania Med. Sch., 488 F. Supp. 1250, 1256 (E.D. Pa. 1980) (citing FED. R. CIV. P. 8(e)). Rule 10(b) refines this general principle by requiring a party to state "its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count [.]" FED. R. CIV. P. 10(b).  Notably, "Rule 10(b) is addressed to separate factual claims rather than to separate legal grounds for relief [.]" LeGare, 488 F. Supp. at 1256; see Ciocca v. Heidrick & Struggles, Inc., No. CV 17-5222, 2018 WL 2298498, at *4 (E.D. Pa. May 21, 2018) ("While alleging each theory in a separate count might have added a measure of clarity to the Complaint—and avoided excess motion practice—it is not required by Rule 10(b) under the circumstances of this case.").

Defendants' argument is thus unpersuasive.

18

1998) (quoting H.R. Rep. No. 101–485, pt. 3, at 48 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 471).  In the employment context, the ADA prevents covered entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

To establish a *prima facie* case under the ADA, a plaintiff must show that: 1) she is disabled within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse decision as a result of discrimination.  See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

Defendants challenge only the second prong, that is, whether Mulder was qualified to perform the essential functions of her job. (Doc. 10, Br. in Supp. at 14).  According to defendants, plaintiff merely asserts in a conclusory fashion that she was a qualified individual with one or more disabilities. (Id.)  Specifically, defendants argue that plaintiff conceded that she was unable to perform her job because she had been on leave for 10.5 of the preceding 12 months and had inquired about performing other work besides her regular duties. (Id.)  Defendants' argument falls short.

19

The Third Circuit Court of Appeals has recognized that a leave of absence may constitute a reasonable accommodation when the plaintiff offers evidence that the leave would be temporary and would enable the employee to perform the essential job functions of the position in the near future. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir.2004) (citation omitted); see also Gardner v. Sch. Dist. of Philadelphia, 636 F. App'x 79, 84 (3d Cir. 2015). Second, "[i]t would be entirely against the import of the ADA if [the plaintiff] [was] not considered qualified because [she] was not able to perform [her] essential job functions during [her] leave, as leave itself was the accommodation requested by [the plaintiff]." Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010); see also Gibson v. Lafayette Manor, Inc., No. CIV.A. 05-1082, 2007 WL 951473, at *7 (W.D. Pa. Mar. 27, 2007) ("[T]he fact that [plaintiff] could not return to work in any capacity at the expiration of her FMLA leave is not dispositive of whether she is a 'qualified individual,' " because additional leave time "is a form of reasonable accommodation.").

Here, the amended complaint alleges that Mulder is a qualified individual with one or more disabilities. (Doc. 7, Am. Compl. ¶ 93).  The amended complaint further alleges that plaintiff provided an anticipated end date for her leave, September 25, 2023, and a favorable prognosis indicating that she expected to

20

be medically cleared to return to work on that date. (Doc. 7, Am. Compl. ¶¶ 54-55).

Viewing the facts in the light most favorable to plaintiff, the amended complaint plausibly alleges that plaintiff would have been able to perform the essential functions of her position upon returning from leave. Nothing in the complaint suggests that Mulder required leave beyond September 2023 or on an indefinite basis. Accordingly, defendants' motion to dismiss plaintiff's claim for disability discrimination will be denied.

### b. Failure to Accommodate

Under the ADA, a plaintiff bringing a failure-to-accommodate claim must establish that: "(1) [she] was disabled and [her] employer knew it; (2) [she] requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [she] could have been reasonably accommodated." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017) (quoting Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006) (footnote and additional citations omitted)); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 320 (3d Cir. 1999).

21

Defendants challenge the second element, i.e., whether Mulder requested reasonable accommodation or assistance.[9] (Doc. 10, Br. in Supp. at 15). Defendants argue that plaintiff's proposed accommodation, "perform[ing] other work besides her regular job duties," does not constitute a request for reasonable accommodation. (Id.; Doc. 7, Am. Compl. ¶ 58).  The court disagrees.

Plaintiff's request to perform other work triggered defendants' duty to engage in the interactive process. The amended complaint alleges that plaintiff kept defendants apprised of her health status following her disabling injury in May 2023 and requested accommodations in the form of medical leave and two extensions of that leave. (Doc. 7, Am Compl. ¶¶ 47, 51, 54-55).  Plaintiff further alleges that she inquired about alternative accommodation and specifically mentioned the ADA when defendants insisted that she cut her leave short and return to work. (Id. ¶¶ 56- 60).  These communications were sufficient to put defendants on notice of both plaintiff's disability and her desire for accommodation.[10] See Taylor, 184 F.3d at 316 (holding that once the employer

---

[9] Additionally, defendants argue that Mulder failed to plead that she was "qualified" for her position. (Doc. 10, Br. in Supp. at 15).  Defendants further contend that her extended and allegedly indefinite series of leaves does not constitute a reasonable accommodation and does not suggest that additional leave would be temporary or would enable her to perform the essential functions of her job in the near future. (Id. at 16). The court has already rejected these arguments as unpersuasive in its discussion of the disability discrimination claim.

[10] The amended complaint alleges that plaintiff inquired about performing other work besides her regular job duties so that she could return to work sooner, but defendants did not respond to this inquiry. (Doc. 7, Am. Compl. ¶ 58). Plaintiff also alleges that she may have been able to

22

knows of the disability and the desire for the accommodation, it must engage in the interactive process and make a reasonable effort to determine the appropriate accommodation).

Plaintiff's amended complaint plausibly alleges that she requested an accommodation and that defendants terminated her employment without engaging in an interactive process. Defendants' motion to dismiss plaintiff's failure to accommodate claim will thus be denied.

---

return to work "even sooner with another accommodation such as reassignment to a job that comported with her physical limitations as she healed." (Id. ¶ 62).

Under the law, once the employer is aware of the employee's disability and the desire for the accommodation, the employer must engage in the interactive process in good faith. Taylor, 184 F.3d at 315–16.

With respect to the interactive process, the Third Circuit has held that:

> An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer . . . [N]either party should be able to cause a breakdown in the [interactive] process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith.

Taylor, 184 F.3d at 312 (quoting Bultemeyer v. Fort Wayne Cmty. Schs., 100 F.3d 1281, 1285 (7th Cir. 1996)).

Furthermore, "a party that fails to communicate, by way of initiation or response, may also be acting in bad faith." Colwell v. Rite Aid Corp., 602 F.3d 495, 507 (3d Cir. 2010) (citations omitted).

At this juncture, plaintiff's allegations reasonably support the inference that defendants acted in bad faith by cutting short her leave and by failing to communicate effectively with her regarding potential accommodation options.

23

### c. Retaliation

Defendants also move to dismiss Mulder's ADA retaliation claim. To establish a *prima facie* case of retaliation in the ADA context, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002) (citation omitted).

Defendants argue that Mulder's amended complaint improperly reframes her discrimination and failure to accommodate claims as a retaliation claim. (Doc. 10, Br. in Supp. at 17). Defendants also challenge the second and third elements of Mulder's *prima facie* retaliation case. (Id. at 17-18). Specifically, defendants contend that the alleged ultimatum that led to Mulder's termination had nothing to do with any protected activity. (Id. at 18). According to defendants, plaintiff was terminated because she failed to return to work the next day, not because she requested medical leave, sought a different position, or complained about being denied vacation. (Id.)

Viewing the facts in the light most favorable to Mulder forecloses these arguments. First, plaintiff alleges that she requested and took three separate medical leaves relating to three different disabilities. (Doc. 7, Am. Compl. ¶¶ 34-

24

38, 45-50, 54-55). As noted earlier, requesting and taking disability-related leave constitutes protected activity under the ADA.

Moreover, defendants terminated plaintiff while she was on medical leave, which she was using as disability accommodation. Terminating plaintiff while she was using such accommodation may constitute suggestive timing sufficient to establish causation. See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (finding unusually suggestive timing where employer decided to replace employee while the employee was on leave).

The amended complaint also alleges that defendants cut plaintiff's medical leave short, insisted that she return to work without any accommodation, and refused to engage in the interactive process. These allegations plausibly support an inference of causation at this stage of the proceedings. Consequently, defendants' motion to dismiss plaintiff's ADA retaliation claim will be denied.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss will be denied. An appropriate order follows.

Date: 3/17/26

JUDGE JULIA K. MUNLEY
United States District Court

25